OPINION
This appeal is brought from a judgment of the Court of Common Pleas of Hancock County rendered in favor of Appellee, Peterbilt of Northwest Ohio, Inc. ("Peterbilt") on a complaint for a writ of mandamus, ordering Appellant, Franklin R. Caltrider, Registrar of the Ohio Bureau of Motor Vehicles ("Bureau") to, among other things, reinstate Peterbilt's certificate of title for a motor home. For the reasons expressed in the following opinion, we affirm the trial court's judgment on all matters presented.
In March 1996, Peterbilt purchased a new Model 385 Truck from the Peterbilt Motors Company. Once purchased, Peterbilt removed a sixty-three inch bunk from the vehicle and transported it to Roadmaster Trailers in Minnesota for the addition of a fourteen foot box compartment, which houses permanent sleeping, cooking, eating and bathroom facilities. The compartment also contains a generator, furnace, air conditioner, and water tank. In addition to the work done to the interior of the vehicle, Roadmaster also installed a "fifth wheel" for the purpose of hauling other trailers. Roadmaster did not alter the axle, suspension system or engine. The purpose of the $82,930 conversion was so that Peterbilt could sell the vehicle to RAD Racing, Inc., a professional automobile racing corporation owned by Peterbilt President, Rick Daugherty.
In September 1996, once the vehicle had been completed and transported back to Ohio, Peterbilt obtained certificate of title No. 3200133816 from the Hancock County Clerk of Courts. The title classified the vehicle as a motor home. Thereafter, on September 25, 1996, the Bureau sent a certified letter to Peterbilt, rescinding the title and demanding that Peterbilt surrender the certificate. Without inspecting the vehicle or gathering any information other than that which the clerk had forwarded, the Bureau explained that the title was improperly issued because Peterbilt's vehicle was mistakenly classified as a motor home.
As a result of this action, Peterbilt filed a complaint for a writ of mandamus on January 27, 1997. The complaint prayed for the court to compel the Bureau to withdraw its demand for the surrender of the title and to reinstate certificate of title No. 3200133816.
Meanwhile, during the pendency of the action, Daughtery used the vehicle to travel to auto races held in various states across the country, while hauling the race car in a forty-six foot trailer attached to the "fifth wheel". Daughtery also displayed the vehicle and offered interior tours to race spectators.
On November 10, 1997, after various discovery materials had been obtained, the Bureau filed a motion for summary judgment. In response, Peterbilt filed a memorandum in opposition and filed its own motion for summary judgment. The trial court subsequently ruled on the motions, and in a March 10, 1998 judgment entry, granted summary judgment in favor of the Bureau. Peterbilt appealed the decision to this court.
In Peterbilt of Northwest Ohio, Inc. v. Mitchell J.Brown[1] (Sept. 29, 1998), Hancock App. No. 5-98-13, a case that was assigned to our accelerated docket, we reversed the trial court's decision based upon the finding that material issues of fact remained. More specifically, we stated that there was a factual issue as to whether the vehicle could be properly classified as a "motor home" under the Ohio Revised Code. Due to our disposition of the issue, the case was remanded to the trial court where it proceeded to a bench trial on May 17, 1999.
After hearing all evidence presented, the court issued a decision on August 2, 1999, wherein it concluded, inter alia, that the vehicle is a "motor home" within the statutory definition. Thus, the trial court found that Peterbilt was entitled to the relief requested. In an August 13, 1999 judgment entry, the court ordered the Bureau to rescind its prior demand and cancellation letter, and to reinstate the previously revoked certificate of title. The Bureau then filed this timely appeal, asserting several assignments of error for our review and consideration.
Prior to reaching the merits of the Bureau's assignments of error, we must address several preliminary matters. First, we point out that after the Bureau filed its notice of appeal and appellate brief in this court, Peterbilt, in the interest of selling the vehicle and without conceding the Bureau's position, requested that it be retitled and classified as a commercial rather than recreational vehicle. Once the new title was issued, Peterbilt sold the vehicle on November 17, 1999. Thus, we must determine whether this case is now moot, as suggested in Appellant's reply brief.
It is well established that the concept of mootness is "rooted both in the `case' or `controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint." James A. Keller, Inc. v. Flaherty
(1991), 74 Ohio App.3d 788, 791. The Ohio Constitution does not contain a counterpart to Section 2, Article III. Id.
Notwithstanding, the Supreme Court of Ohio has found that Ohio courts, like the federal tribunals, are bound "* * * to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Minerv. Witt (1910), 82 Ohio St. 237, 238, quoting Mills v. Green
(1895), 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293,293-294.
However, it is also well settled that a recognized exception to the mootness doctrine exists where an issue is capable of repetition, yet evading review. Flaherty, supra,74 Ohio App.3d at 791. We find that the present case falls within this exception. With respect to whether the issue is capable of repetition, the evidence demonstrates that Peterbilt and several of its customers have ordered similar conversions in the past and that there appears to be a growing market for these vehicles, which, in addition to automobile racing equipment, could haul horse trailers, boats and serve other recreational pursuits. Thus, we conclude that this matter is not so unique that it will not arise again in the future.
Moreover, with respect to whether this issue will evade review, we answer in the affirmative. This case was pending in the trial court for approximately two and a half years. During this time, Peterbilt was precluded from selling the vehicle due to the cancellation of title. It was only until Peterbilt, at the last minute and under exceptional circumstances, decided to alter its position on the state of the title in order to finally benefit from the conversion. It is unlikely that Peterbilt will participate in another lengthy litigation the next time this issue arises. Based upon this analysis, we cannot conclude that the issues presented in this case are moot, even though the controversy over this particular vehicle no longer exits.
With that stated, we must now address whether the action should be dismissed for Peterbilt's failure to comply with R.C.2731.04, which provides, in relevant part:
 Application for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying * * *.
Despite the mandate contained in R.C. 2731.04, Peterbilt brought the complaint in its own name and not in the name of the state as required by the statute. "A writ of mandamus may be denied where the action is not brought in the name of the state on the relation of the person requesting the writ." State ex rel.Huntington Ins. Agency, Inc. v. Duryee (1995), 73 Ohio St.3d 530,532, citing, Maloney v. Sacks (1962), 173 Ohio St. 237, 238;Maloney v. Court of Common Pleas of Allen County (1962), 173 Ohio St. 226,227. However, the record in this case demonstrates that the Bureau never objected to Peterbilt's failure to comply with R.C. 2731.04 nor has the issue been raised on appeal.
Because we agree with the reasoning set forth in the cases ofGallia Cty. Veterans Serv. Comm. v. Gallia Cty. Bd. of Cty.Commrs. (Mar. 6, 1996), Gallia App. No. 95CA13, unreported, reversed on other grounds at 77 Ohio St.3d 251, and Smithbergerv. Woodsfield (June 10, 1983), Monroe App. No. 565, unreported, we hold that the failure to bring a writ of mandamus in the name of the state on relation of the person requesting the relief, an error which was neither objected to nor raised prior to reaching the reviewing court, is a waivable defect rather than a jurisdictional prerequisite. Indeed, if the Bureau had ever objected to the error, Peterbilt would have been afforded the opportunity to amend its complaint and avoid dismissal. GalliaCty. Veterans Serv. Comm. at **2. Therefore, although Peterbilt's complaint is apparently defective on its face, we find that any error has been waived and does not warrant a dismissal at this juncture.
Since we have found that the case is neither moot nor subject to dismissal on procedural grounds, we will now address the standard of review this court must follow in deciding the case at hand. In determining whether a trial court has properly granted a writ of mandamus, the reviewing court is bound by an abuse of discretion standard. City of Cleveland v. Village of HighlandHills (June 24, 1993), Cuyahoga App. No. 64605, unreported, citingState, ex rel. Ney v. Niehaus (1987), 33 Ohio St.3d 118. Unless the trial court has rendered an arbitrary, unreasonable or unconscionable decision, this court must affirm the writ.
With this standard in mind, we are prepared to consider the specific assignments of error raised by the Bureau. For the sake of clarity, we have chosen to address the arguments outside of their original sequence.
 Assignment of Error II The trial court erred as a matter of law when it concluded that R.C. 4501.01(Q) does not require a vehicle to be used for travel, recreation and vacation uses in order for it to be titled as a recreational vehicle.
R.C. 4501.01(Q) provides the following:
 "Recreational vehicle" means a vehicular portable structure that is designed and constructed to be used as a temporary dwelling for travel, recreational, and vacation uses and is classed as follows:
 (2) "Motor home" means a self-propelled recreational vehicle that is constructed with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.
The Bureau does not dispute the fact that Peterbilt's vehicle was equipped with the requisite permanent facilities enumerated in R.C. 4501.01(Q)(2). The Bureau instead maintains that the vehicle cannot properly be deemed a motor home because it does not fit within the definition of "recreational vehicle". This argument is based upon the fact that the Peterbilt vehicle was not used for travel, recreational, and vacation purposes since RAD Racing, Inc. is in the business of professional auto racing. We are not convinced.
In contrast to the argument advanced by the Bureau herein, we find that R.C. 4501.01(Q)(1) does not require that in order to be classified as recreational, a vehicle must be used for travel, recreation, and vacation purposes. The plain language of the statute merely provides that the vehicle must be designed andconstructed to be used for such activities. The actual orintended use of the vehicle is not relevant under these definitions. Thus, since the evidence is clear that Roadmaster designed and constructed the converted vehicle in order to be conducive to all three of these purposes, we conclude that the trial court did not abuse its discretion by finding that the vehicle fit within the above definitions.
Nor do we find that the trial court erred in concluding that these definitions do not preclude the classification of a recreational vehicle in the event that it is also used for a seemingly commercial purpose, such as hauling a race car. Although the Bureau asserted that titling Peterbilt's vehicle as a motor home could cause potential confusion in the event of an investigation into the original Vehicle Identification Number (VIN), Thomas Romaker, an investigator for the Bureau and a former trooper for the Ohio State Highway Patrol, testified that he would have no trouble identifying the vehicle from its VIN number, even though it had been converted from its original state.
In addition, the Bureau claimed that classifying the vehicle as a motor home could cause potential safety concerns since the Ohio Revised Code does not require a commercial license in order to operate a motor home. The evidence, however, does not support this argument. The only testimony on the issue came from Rick Daughtery, who stated that in his experience with the operation of commercial vehicles, a seasoned driver would not need a commercial license in order to be able to drive the Peterbilt motor home.
Based upon the foregoing analysis, we find the Bureau's argument not well-taken and overrule its second assignment of error.
 Assignment of Error III The trial court erred when it found that the BMV had insufficient information on September 25, 1996 to cancel Peterbilt's certificate of title.
The Bureau argues herein that the trial court abused its discretion in granting the writ based upon the conclusion that the agency cancelled the title without sufficient evidence upon which to base its decision. We disagree.
The record illustrates that the Hancock County Clerk of Courts issued the title to Peterbilt on September 13, 1996. The original title classified the vehicle as a motor home. However, because the clerk grew concerned that the vehicle may have been mistakenly classified, the Bureau was contacted shortly after the title was issued. Robert Posey, Section Chief for the Title Lien Division of the Bureau, became involved in the matter and was forwarded all relevant paperwork that had been in the clerk's possession.
Based upon the paperwork, which included the certificate of origin from both Peterbilt and Roadmaster, Posey concluded that the vehicle was not a motor home. Notwithstanding, Posey admitted at trial that despite the fact that he did not inspect the vehicle prior to canceling the title, a proper determination of motor home status necessarily includes such an examination. Furthermore, the evidence shows that after sending the notice of cancellation, Posey decided that a thorough investigation into the Peterbilt vehicle was warranted. These facts lead us to conclude that the trial court did not err in its determination that the Bureau arbitrarily cancelled the title without sufficient evidence.
Based upon the foregoing, the Bureau's third assignment of error is overruled.
 Assignment of Error IV The trial court erred when it concluded that the focus of its inquiry should be limited to evidence which was made available to the BMV prior to its original September 25, 1996 cancellation of the title in question.
The Bureau maintains that the trial court incorrectly limited its focus of the trial to the actions leading up to the cancellation of the title. This argument is based upon the fact that the evidence shows that, subsequent to the date of cancellation, Peterbilt used the vehicle for commercial purposes and not for recreation, travel and vacation. Since we have already decided that the design of the vehicle is the determining factor, and that the actual or intended use is not relevant to the determination of whether it should be classified as recreational or commercial, we must reject the Bureau's argument. Indeed, because the factual evidence did not demonstrate that the design of the vehicle had been altered after September 25, 1996, the trial court did not abuse its discretion in limiting its inquiry.
Accordingly, the Bureau's fourth assignment of error is overruled.
 Assignment of Error I The trial court erred when it granted both relief which was not sought in Relator's complaint and relief not ordered in the court's decision.
In its complaint for a writ of mandamus, Peterbilt requested the trial court to compel the Bureau to withdraw its demand for the surrender of the certificate of title and to reinstate Certificate of Title No. 3200133816. However, in its August 13, 1999 judgment entry, the trial court granted the relief requested and also ordered the Bureau to rescind the September 25, 1996 letter of cancellation. The Bureau now argues that the order to rescind the letter of cancellation, which was not part of the relief sought in the original complaint, should be considered reversible error. This argument is wholly without merit. Once the trial court found that the Bureau was under a duty to withdraw its demand for the surrender of the title, it logically follows that it was also under a duty to withdraw the letter of cancellation. We fail to see how this is a distinction with a difference.
In an equally confusing argument, the Bureau also contends that the trial court erred in adopting the judgment entry as proposed by Peterbilt because the judgment entry was not drafted in accordance with the August 2, 1999 written decision. More particularly, the written decision states that the Bureau should be ordered to withdraw its prior demand for the certificate of title and to rescind its letter of cancellation. Although the decision does not mention the reinstatement of title, the August 13, 1999 judgment entry specifically orders the Bureau to do so.
As a result of this alleged discrepancy, the Bureau argues that the trial court committed reversible error in adopting Peterbilt's entry. It appears that this assertion is based upon the argument that the trial court erroneously limited the evidence to the actions taken by the Bureau prior to the cancellation of title and thus, the issue of reinstatement should not have been determined. Since we have already concluded that the trial court did not err in limiting the evidence and that actual use of the vehicle had no bearing on the court's decision, we conclude that the trial court did not err in this respect.
Accordingly, the Bureau's first assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
HADLEY, P.J., and SHAW, J., concur.
[1] Mitchell J. Brown was the registrar of the Bureau at the time of the filing of the original complaint. Mr. Brown has since left office, thus, Franklin R. Caltrider, the present registrar, was named as a substitute party.